IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| HOWARD ROSEN, ) | |
| ) | Civil Action No.: 4:18-cv-00857-RBH |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| HALPERNS' STEAK AND SEAFOOD ) | |
| COMPANY, d/b/a BEECH HAVEN ) | |
| GEORGIA CORP., GORDON FOOD ) | |
| SERVICES, INC., and HOWARD I. ) | |
| HALPERN, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This action arises from a dispute related to Plaintiff Howard Rosen's ("Plaintiff" or "Rosen") employment with Halperns' Steak and Seafood Company, d/b/a Beech Haven Georgia Corp. ("Halperns' Steak and Seafood").[1] Rosen is suing his former employer for state law breach of contract and breach of contract accompanied by fraudulent act claims, as well as for violations of the South Carolina Payment of Wages Act ("SCPWA") and the Fair Labor Standards Act (the "FLSA") based on an alleged unlawful deductions and the failure to pay overtime wages. Rosen amended his complaint to add a retaliation claim under the FLSA. Rosen also named Gordon Food Services, Inc. and Howard I. Halpern ("Halpern"), who is or was the Chief Executive Officer and Chief Financial Officer of Halperns' Steak and Seafood. This action was initially brought in state court but was removed to this Court on March 28, 2018.

Currently pending before the Court is Halpern's motion to dismiss Plaintiff's complaint

---

[1] Defendants contend Plaintiff has improperly named Halperns' Steak and Seafood Company, d/b/a/ Beech Haven Georgia Corp., as a defendant in this lawsuit. Defendants identify the proper entity as Halperns' Steak and Seafood Company, LLC.

pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. [ECF #7]. The parties have had the opportunity to extensively brief the issues raised in the motion, and this Court has thoroughly considered all pleadings and memoranda filed in this case, as well as the affidavits attached to the pleadings in this case. This matter is now before the Court for review and issuance of an Order.[2]

**Factual Background and Procedural History**

Rosen is a resident of Horry County, South Carolina. Defendant Halperns' Steak and Seafood, a Georgia corporation, is commercial supplier and distributor of perishable foods. Gordon Food Services, Inc. ("Gordon Food Services") is a Michigan corporation and, according to the Complaint, acquired Halperns' Steak and Seafood in 2015. Halpern is the current Chairman of Halperns' Steak and Seafood and is or was the Chief Executive Officer and/or Chief Financial Officer of Halperns' Steak and Seafood.[3] Rosen alleges in the complaint that Halpern is a Georgia resident, while Halpern asserts in his declaration that is a Florida resident. According to Rosen, he has been employed since 2009 as a salesman for Halperns' Steak and Seafood, servicing a distribution area in Horry County. [ECF #1-1, ¶ 6]. Rosen alleges that beginning in early 2010, unbeknownst to him, Halperns' Steak and Seafood began deducting a weekly amount from his paycheck for the purpose of reimbursing the company for losses incurred in the regular course of its business. [ECF #1-1, ¶ 9]. He further alleges that in 2011, Defendants began deducting

---

[2] Under Local Civil Rule 7.08 (D.S.C.), "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." Upon review of the briefs, the Court finds that a hearing is not necessary.

[3] Rosen initially alleged Halpern was the C.E.O. and C.F.O of Halperns' Steak and Seafood. In the amended complaint, he also identifies Ray Hicks as the C.E.O.

2

amounts out of his paycheck to cover "shortfalls" in Rosen's weekly sales. [ECF #1-1, ¶ 11]. In March of 2017, he entered into a three-year employment contract with Halperns' Steak and Seafood. [ECF #1-1, ¶ 8]. Around this time, Rosen alleges he called the Gordon Food Services ethics hotline to complain about the unlawful deductions from his paycheck. He alleges he also complained about the treatment he received from two other employees, Sandy Cornelius and Rick Cornelius. [ECF #1-1, ¶ 12]. After he lodged these complaints, Rosen alleges these two employees, along with another employee, Chad Renegar, continued to harass him and engage in retaliatory conduct toward him. [ECF #1-1, ¶¶ 12-13]. Rosen alleges Defendants did not remedy the unlawful withholding of wages, nor did they respond to the retaliatory conduct of these employees. [ECF #1-1, ¶¶ 14].

Rosen's complaint alleges state law causes of action for breach of contract and breach of contract accompanied by a fraudulent act and violations of the South Carolina Payment of Wages Act ("SCPWA") and the Fair Labor Standards Act (the "FLSA") against all Defendants. Rosen alleges Halpern is subject to liability under the SCPWA and the FLSA because he is considered an "employer" as defined by those statutes, as well as case law interpreting these statutes. [ECF #1-1, ¶¶16, 24]. As aptly pointed out by Halpern, Rosen does not allege that he signed a contract of employment with Halpern or that Halpern was the signatory on his employment contract.

Thereafter, Rosen amended his complaint to allege that he was terminated from employment by C.E.O. Ray Hicks and HR Manager Tim Fatum, after continuing to suffer further retaliation and harassment from Defendants. [ECF #23, ¶¶ 17]. He added a fifth cause of action against Defendants for retaliation under the FLSA. [ECF #23]. Rosen references the attachment

of the employment contract to his amended complaint; however, the contract is not attached to the amended complaint or otherwise included within the pleadings.

On April 25, 2018, Halpern filed a motion to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In support of this motion, Halpern filed a Declaration, stating that he has been a resident of Florida since 2016. [ECF #7-2, ¶ 3]. He further provides that he has visited South Carolina one time in the past ten years for a family function. [ECF #7-2, ¶ 6]. He does not own real estate in South Carolina, nor has he owned real estate in South Carolina in the last twenty-five years. [ECF #7-2, ¶ 7]. He does not maintain an office or workspace in South Carolina but instead conducts business in Atlanta. [ECF #7-2, ¶¶ 7-8]. Halpern states that he negotiated Mr. Rosen's employment contract via e-mail and phone while in Georgia. [ECF #7-2, ¶ 9].

In response, Rosen provided his own affidavit. Rosen recalls meeting with Halpern in South Carolina during a trade show that occurred over a weekend in January of 2010. [ECF #15-1, ¶ 5]. Rosen further states that while Halpern was in Charleston for a family function, Halpern met with another individual to discuss Halperns' Steak and Seafood business, specifically making a comment about Mr. Rosen. [ECF #15-1, ¶ 6]. He states Halpern contacts the regional sales manager by phone two to three times per month regarding business in South Carolina and that Halpern is involved in every aspect of the company's business. [ECF #15-1, ¶¶ 7-8]. Finally, Rosen states that his contract was negotiated and executed in South Carolina. [ECF #15-1, ¶ 8]. After reviewing Rosen's response to his motion to dismiss, Halpern provided a supplemental affidavit explaining that upon reflection, he did recall attending a food show where Rosen was

4

likely present.[ECF #17-1, ¶ 4]. As to his trip to South Carolina for a family function, Halpern asserts the meeting pertained to a personal matter, rather than a business matter. [ECF #17-1, ¶ 3].

## **Standard of Review and Applicable Law**

Halpern files his motion pursuant to Rules 12(b)(2) of the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for "lack of personal jurisdiction." A "federal district court has personal jurisdiction over a defendant if the state courts where the federal court is located would possess such jurisdiction." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). When personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the burden is on the plaintiff to ultimately prove grounds for jurisdiction by a preponderance of the evidence. *Mylan Labs, Inc., v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). If the district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, a plaintiff need only prove a prima facie case of personal jurisdiction. *Id.* A court may consider all parties' pleadings, affidavits, and other supporting documents in deciding whether a plaintiff has established a prima facie case of personal jurisdiction. *Id.* at 62; *Luberda ex rel. Luberda v. Purdue Frederick Corp.*, No. 4:13-CV-00897, 2014 WL 1315558, at *2 (D.S.C. March 28, 2014). However, once jurisdictional discovery or an evidentiary hearing is completed, the preponderance of the evidence burden applies. *Nat'l Beverage Screen Printers, Inc. v. DALB, Inc.*, 1:16-cv-03850, 2018 WL 2718035, at *2 (D.S.C. June 7, 2018)(citing *Informaxion Sols, Inc. v. Vantus Grp.*, 130 F. Supp. 3d 994, 998 (D.S.C. 2015).

5

In assessing whether personal jurisdiction exists, the court must consider the facts in a light most favorable to the plaintiff. *Carefirst of Maryland, Inc., v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396-97 (4th Cir. 2003). The court must draw all "reasonable" inferences in favor of the plaintiff and look to the proof provided by all parties in considering a Rule 12(b)(2) motion. *Mylan Labs,* 2 F.3d at 60. Still, the court does not need to credit conclusory allegations or farfetched inferences. *Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 405 (D.S.C. 2012).

Halpern is a non-resident defendant. Personal jurisdiction over an out-of-state defendant may be either general or specific. Halpern argues that Rosen cannot establish either general jurisdiction or specific jurisdiction in this case. Rosen even concedes that *general* personal jurisdiction is not likely in this case. [ECF #15, p. 3]. However, he argues that Halpern has subjected himself to *specific* jurisdiction of this Court by his activities with the forum state. Whether personal jurisdiction exists over a nonresident defendant involves a two-step analysis. The Court must first determine whether the South Carolina long arm statute applies; second, it must evaluate whether the non-resident's contacts in South Carolina are sufficient to satisfy due process. *ESAB Group., Inc., v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012). A federal court may exercise personal jurisdiction over nonresident individuals in a manner prescribed by state law, so long as the application of that state's long-arm statute comports with due process. *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004). In South Carolina, the courts have held that the state's long arm statute is coextensive with the limits set by the due process clause, therefore the statutory inquiry merges with the constitutional inquiry. *Carefirst of Maryland, Inc., v.*

6

*Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396-97 (4th Cir. 2003).

The Due Process Clause permits personal jurisdiction over a defendant when that defendant has certain minimum contacts with that forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (explaining that if a court determines that a defendant has certain minimum contacts with the forum state, then the Court must consider whether the exercise of jurisdiction would comport with "fair play and substantial justice." A defendant has sufficient minimum contacts with a forum state when the defendant's conduct with the state is such that he should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (U.S. 1980). A court may properly exercise specific jurisdiction when a defendant engages in some activity purposefully aimed toward the forum state, and the cause of action arises out of or is related to a defendant's activities within the forum state. *See ESAB Group, Inc. v. Centricut, LLC*, 34 F. Supp.2d 323, 331-32 (D.S.C. 1999). If a defendant's contacts with a state are the basis for the lawsuit, those contacts may establish specific jurisdiction. *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

Courts in the Fourth Circuit apply a three-part test in considering the propriety of exercising specific jurisdiction: (1) the extent to which the defendant purposefully availed himself of the privilege of conducting activities within the State; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th

7

Cir. 2009); *ESAB Group, Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391-92 (4th Cir. 2012); *see also Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215-16 (4th Cir. 2001). A plaintiff must prevail on each prong in order for this Court to exercise personal jurisdiction over the defendant in this case. *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016). Because this three-part analysis focuses on the relationship among the defendant, the forum, and the litigation, the Supreme Court has placed emphasis on two related aspects of this relationship: (1) the relationship must arise out of contacts that Halpern *himself* creates with the forum state; and (2) the "minimum contacts" analysis focuses on Halpern's contacts with the forum state itself, not the contacts with persons who reside there. *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014) (emphasis in original).

## Discussion

This Court must consider whether there are sufficient "minimum contacts" with the forum state in determining whether Halpern purposefully availing himself of the privilege of conducting business in South Carolina. *See ESAB Group, Inc.*, 685 F.3d at 392.[4] A defendant's activities with the forum state will be insufficient to support jurisdiction if they are only random, fortuitous or attenuated. *Id.* The "minimum contacts" analysis looks to the defendants' contacts within the forum state rather than the defendant's contacts with persons who reside there. *Walden v. Fiore*,

---

[4] In determining whether a defendant purposefully availed himself of the privileges of conducting activities in the forum state, courts have examined several nonexclusive factors, including: (1) whether the defendant maintains officers or agents in the forum state; (2) whether defendant owns property in the forum state; (3) whether defendant reached into the forum state to solicit or initiate business; (4) whether defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether defendant made in-person contact with the resident in the forum state regarding the business relationship; (7) the nature, quality, and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum. *Consulting Eng'rs Corp.*, 561 F.3d at 278.

8

571 U.S. 277, 285 (2014). A plaintiff can satisfy the second prong of this test when activities within the forum state are the genesis of the dispute or when substantial correspondence and collaboration between the parties, one of which is in the forum state, form an important part of a plaintiff's claim. *Tire Eng'g and Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 392, 303 (4th Cir. 2012). Finally, in analyzing constitutional reasonableness, the Fourth Circuit explains that this prong protects individuals from litigation that is so difficult and inconvenient that the party "unfairly is at a severe disadvantage in comparison to its opponent." *Burger King*, 471 U.S. at 478.[5]

Halpern's basic argument is that Rosen cannot show that he has had any direct, personal involvement in the actions complained of in the complaint. Halpern essentially argues that Rosen relies solely upon Halpern's role as an officer or agent of Halpern's Steak and Seafood to establish jurisdiction. An employee's contacts with a forum state are not to be judged by their employer's activities there. *See Calder v. Jones*, 465 U.S. 783, 790 (1984). However, even a single contact by a nonresident defendant may support a constitutional exercise of specific jurisdiction with respect to a claim arising from that contact, if the contact was purposefully aimed at the forum state, sufficiently egregious in impact. *First Am. First, Inc. v. National Ass'n of Bank Women*, 802 F.2d 1511, 1516 (4th Cir. 1986); *see generally Sheppard v. Jacksonville Marine Supply, Inc.*, 877 F. Supp. 260, 265-66 (D.S.C. 1995). Halpern argues that he was not the

---

[5]Courts consider a variety of factors to consider the constitutional fairness of exercising jurisdiction, including (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Consulting Eng'rs Corp v. Geometric Ltd.*, 561 F.3d 273, 279 (4th Cir. 2009).

9

"guiding spirit" or "central figure" of the conduct allegedly causing the injury to Rosen, therefore he is not subject to jurisdiction. *See generally Magic Toyota, Inc. v. Southeast Toyota Distrib., Inc.*, 784 F. Supp. 306, 315 (D.S.C. 1992) (quoting *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 907 (1st Cir. 1980)).

In *Columbia Briargate v. First Nat. Bank of Dallas*, the Fourth Circuit explained the following in considering the tort liability of a corporate agent in reference to his amenability for service under a state long-arm statute: "so long as the agent has not participated in the alleged tort in the forum state, he is immune from suit on such tort both under general corporate law and under the state long-arm statute but if he has 'direct personal involvement' in a tort committed in the forum state, the agent is subject to jurisdiction in that state." 713 F.2d 1052, 1064 (4th Cir. 1983). What is required is a showing of some direct, personal involvement by the corporate officer in some decision or action causally related to the plaintiff's injury. *Magic Toyota*, 784 F. Supp. at 315. An agent who takes purposeful and calculated action against a plaintiff in a forum should be amendable to suit there. *Id; see Addy's Harbor Dodge v. Global Vehicles U.S.A., Inc.*, 4:11-cv-1065, 2014 WL 1779450, at *6 (D.S.C. 2014) (dismissing a former chairman and C.E.O. of a company from a lawsuit after finding that the two officers were not guiding the alleged wrongful conduct).

Viewing the facts in a light most favorable to Plaintiff, Rosen entered into a contract of employment with Halperns' Steak and Seafood. In 2010 and 2011, Halperns' Steak and Seafood began deducting certain amounts from Rosen's paycheck. When Rosen complained about these unlawful deductions, Rosen alleges he endured wrongful treatment at the hands of certain

employees, none of which were Halpern. Rosen states that the damages he is owed from Defendants are based on his work in South Carolina and the benefits he provided to the company and to Halpern. Rosen does not allege within his pleadings or his affidavit that Halpern was directly involved in or aware of any of the alleged unlawful conduct.

Halpern apparently resides in either Florida or Georgia.[6] He maintains an office in Georgia and does not own any real property in South Carolina. In the last ten years, Halpern has been physically present within the forum state of South Carolina two times: once in 2010 when Halpern attended a trade show and provided experience and knowledge about the company to Rosen over the course of several days; and once in the last few years when Halpern met with a sales representative of the company located in Charleston, ostensibly to discuss business matters, while also attending a family function. Rosen contends that during that second visit, Halpern met with a salesman in Charleston to and at some point in the conversation told the salesman not to "paint a mark on your back like Howie did," apparently in reference to Rosen. Rosen does not allege that Halpern traveled to South Carolina to meet with Rosen at any other time or was physically present in South Carolina to negotiate any terms of his employment relationship with Halperns' Steak and Seafood. Instead, Rosen states that Halpern contacts the regional sales manager who works in South Carolina via telephone on a monthly basis to discuss business matters, including Rosen's performance and sales.

Rosen has not specified any conduct by Halpern to suggest a link between his contacts with the forum state and Rosen's alleged injuries. Halpern's telephone contact with an employee

---

[6] Whether Halpern is actually a Florida resident or a Georgia resident does not change this portion of the analysis as to whether Halpern is subject to personal jurisdiction.

11

regarding company business in South Carolina does not appear related to Rosen's injuries. Rosen does not allege in any specific way that Halpern was involved in his termination or in any of the retaliatory acts complained of in this case. Rosen also does not allege that either of Halpern's two visits to the forum state, specifically his trade show visit and his meeting in Charleston, form the basis of the causes of action in this lawsuit. In other words, Rosen has not pointed to any direct, personal involvement by Halpern in a decision or action causally related to any of his alleged injuries. Rosen's injuries do not appear to arise out of or relate to Halpern's activities directed at South Carolina. Further, in considering whether it would be constitutionally reasonable to assert jurisdiction over Halpern, the inconvenience to Defendants, given that they are all non-residents and the company is headquartered in another state, would also tend to weigh against exercising jurisdiction. However, Rosen has requested additional time to conduct limited jurisdictional discovery in this case pursuant to Federal Rule of Civil Procedure 15(a)(2). This Court finds that in the interest of justice, it should grant Plaintiff additional time in which to conduct limited jurisdictional discovery. *See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (recognizing broad discretion of district courts in resolving discovery issues). Accordingly, this Court will allow thirty (30) days from the date of this Order for Plaintiff to engage in limited jurisdictional discovery prior to ruling on Halpern's motion.[7] At the expiration of this time period, the parties may submit any additional information to this Court regarding the motion to dismiss by February 15, 2019.

---

[7] As previously stated, once jurisdictional discovery is completed, the preponderance of the evidence standard applies. *See DALB, Inc.*, 2018 WL 2718035, at *2.

**Conclusion**

The Court has thoroughly reviewed the entire record, including the pleadings, Defendant's Motion to Dismiss [ECF #7], Plaintiff's Response to the Motion [ECF #15], Defendant's Supplemental Motion [ECF #17] and all applicable pleadings and exhibits provided to this Court, including deposition testimony, affidavits, attachments, and the applicable law. For the reasons stated above, this Court will allow the parties thirty days to conduct limited jurisdictional discovery, and the parties will have until February 15, 2019 to submit any additional information prior to this Court ruling on the motion in this case.

**IT IS SO ORDERED.**

Florence, South Carolina
January 4, 2019

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge